IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

AMERICAN GENERAL LIFE
INSURANCE COMPANY,

    Plaintiff,

       v.

ANNA KLESHNINA,

    Defendant.

CIVIL ACTION FILE
NO. 1:21-CV-2105-TWT

## OPINION AND ORDER

This is an action to rescind a life insurance policy. It is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 28], the Defendant's Objections to the Declaration of Joan Kline Filed June 16, 2022 [Doc. 50], the Defendant's Objections to Portions of the Errata Sheet to Plaintiff's Rule 30(b)(6) Deposition [Doc. 58], and the Defendant's Objections to Portions of the Declaration of Joan Kline [Doc. 59]. For the reasons set forth below, the Plaintiff's Motion for Summary Judgment [Doc. 28] is GRANTED, the Defendant's Objections to the Declaration of Joan Kline Filed June 16, 2022 [Doc. 50] is DENIED, the Defendant's Objections to Portions of the Errata Sheet to Plaintiff's Rule 30(b)(6) Deposition [Doc. 58] is DENIED as moot, and the Defendant's Objections to Portions of the Declaration of Joan Kline [Doc. 59] is DENIED.

## I.   Background

The Plaintiff, American General Life Insurance Company, seeks to rescind a life insurance policy (the "Policy") that it issued to the husband of the Defendant, Anna Kleshnina, due to alleged misrepresentations on his application. The husband, Kambiz Khadem, applied for a $750,000 term life insurance policy with American General on February 12, 2020. (Pl.'s Statement of Undisputed Material Facts ¶ 1.) The application (the "Application") consisted of two parts: Part A, which addressed the type of insurance sought by Khadem, and Part B, which addressed Khadem's health and medical background. (*Id.* ¶ 2.) Part B was prepared by Chelsea St. Martin, an independent paramedical professional who worked at all relevant times for American Paraprofessional Services, Inc., not American General. (*Id.* ¶ 3.) During the Part B interview, St. Martin read aloud the Application questions from a link furnished by American Paraprofessional Services, transcribed Khadem's answers onto a tablet, and allowed Khadem to review the completed Application. (*Id.* ¶ 4-5, 7.) By the Defendant's own admission, Khadem was under no disability or other condition that precluded him from answering the questions truthfully, fully, and completely, and St. Martin asked Khadem each and every question without rushing him through the process. (*Id.* ¶ 6.) Khadem was not tricked or deceived as to any question, and he had a full and fair opportunity to review the Application at the end of the interview. (*Id.* ¶ 8.)

One of the questions at issue in this case, question 5(G)(1), asked: "Other than previously stated, in the past 5 years, has the Proposed Insured . . . been hospitalized, consulted a member of the medical profession or had any illness, injury or surgery?" (*Id.* ¶ 11.) Khadem responded "no." (*Id.*) Question 5(C) similarly asked: "Other than previously stated, has the Proposed Insured taken any medications, had treatment or therapy or been under medical observation within the past 12 months?" (*Id.* ¶ 23 & Ex. C at 4.)[1] This time, Khadem answered "yes," listing two medications for high blood pressure which were prescribed by Dr. Lloyd Weddington. (*Id.* Ex C. at 4, 9.) However, as American General later learned, Khadem had made several other doctor visits in the months leading up to his Application. On April 10, 2019, Khadem consulted with Dr. Mark Salsberry at Wellstar Urgent Care about a possible strep throat infection, cerumen impaction, and rectal bleeding. (*Id.* ¶ 12 & Ex. F at 2.) About a week later, on April 18, 2019, Khadem visited Dr. Patrick Hammen at Wellstar Colon and Rectal Surgery, who assessed him with internal hemorrhoids, screening for colorectal cancer, and rectal bleeding. (*Id.* ¶ 13 & Ex. G at 2.) On December 12, 2019, Khadem had a follow-up appointment with Dr. Hammen, who again recommended a "screening for colorectal cancer with rectal bleeding." (*Id.* ¶ 15.) And on January 23, 2020,

---

[1] In this Opinion and Order, all citations to exhibits (as opposed to deposition transcripts, declarations, or other named documents) refer to the PDF pagination.

Khadem saw Dr. Hammen a third time "to discuss ongoing issues with hemorrhoids"; the doctor noted then that Khadem was scheduled for a colonoscopy in two weeks' time. (*Id.* ¶ 20 & Ex. L. at 2.)

Next, question 5(G)(2) asked in relevant part: "Other than previously stated, in the past 5 years, has the Proposed Insured . . . been advised to have any diagnostic test . . . that was NOT completed[?]" (*Id.* ¶ 16 & Ex. C at 4.) Again, Khadem answered "no." (*Id.*, Ex. C at 4.) And again, American General points to potentially responsive information that was not disclosed in Khadem's Application. For example, during the December 12, 2019 appointment, Dr. Hammen wrote that Khadem "was unable to pursue colonoscopy due to the birth of the second child earlier this year," but Khadem did agree to undergo the procedure on February 7, 2020. (*Id.*, Ex. I at 2 & Ex. J at 2; Hammen Decl. ¶ 5.) Although Khadem had to reschedule his colonoscopy on February 5, 2020, "due to insurance," he confirmed a new date in April 2020. (Pl.'s Statement of Undisputed Material Facts ¶ 22; Hammen Decl. ¶ 8.) None of these colonoscopies, whether merely advised or actually scheduled (and rescheduled), were reported as diagnostic tests under question 5(G)(2).

Finally, question 2 asked: "Does the Proposed Insured have a medical appointment scheduled within the next three months?" (*Id.* ¶ 26.) Whereas Khadem answered "yes," the sole appointment listed was a routine physical with Dr. Weddington at Wellstar East Cobb Health Park. (*Id.*, Ex. C at 2.) But on February 13, 2020—just one day after completing the Part B

questionnaire—Khadem was back in Dr. Hammen's office to discuss his "long-standing history of internal hemorrhoids with mild prolapse and bleeding." (*Id.* ¶ 27 & Ex. O at 2.) Dr. Hammen wrote at that time: "Initial plan was to treat conservatively and then reevaluate at the time of his colonoscopy. Unfortunately, he has had to delay his colonoscopy until April of this year." (*Id.* ¶ 27 & Ex. O at 2.) Then, on March 9, 2020, Khadem had a consultation with Dr. Anushka Arumugasaamy at Wellstar Colon and Rectal Surgery concerning his "bleeding with almost every bowel movement and anorectal pain." (*Id.* ¶ 28 & Ex. P at 2.) Dr. Arumugasaamy recommended that the colonoscopy be moved up a month to March 2020 and discussed possible surgical options for Khadem's hemorrhoids depending on the procedure results. (*Id.* ¶ 28 & Ex. P at 3.) Neither these two appointments nor Khadem's previously scheduled colonoscopy were disclosed under question 2.

Khadem signed the Part B Application on February 12, 2020, attesting that he had read the statements contained in the Application and that his answers "are true and complete to the best of my knowledge and belief." (*Id.* ¶ 9 & Ex. C at 6.) In signing the application, Khadem also acknowledged that "no information about me will be considered to have been given to [American General] by me unless it is stated in the application," and he agreed "to notify [American General] of any changes in the statements or answers given in the application between the time of application and delivery of any policy." (*Id.* ¶ 10 & Ex. C. at 6.) In other words, Khadem was required to inform American

General of any changes to his Part B answers that occurred between February
12, 2020—the Application date—and March 10, 2020—the Policy's earliest
possible delivery date. (*Id.* ¶ 25.)

On February 13, 2020, American General ordered and received an IRIX
prescription history report (the "Rx Report") with Khadem's prescriptions.
(Def.'s Statement of Additional Undisputed Material Facts ¶ 3.) The Rx Report
revealed for the first time that Dr. Hammen had prescribed Khadem a Suprep
Bowel Prep Kit and Anucort suppositories on December 12, 2019. (*Id.* ¶ 4.)
Upon learning of Dr. Hammen, American General requested a Personal Health
Interview ("PHI") with Khadem, which was conducted by CRL-Plus Inc. on
February 26, 2020. (Pl.'s Statement of Undisputed Material Facts ¶ 29; Kline
Dep. at 60:21-62:20.) The PHI Report stated that Khadem did not take the
Suprep Bowel Prep Kit "BUT FOR A COLONOSCOPY DID NOT HAVE AS
DR DETERMINED ISSUE WAS THE HEMORRHOIDS AND COLONSCOPY
NOT NECESSARY FOR NOW. WAIT TILL AGE 50. PLANS TO DO IT 2
YEARS FROM NOW." (*Id.* ¶ 29 & Ex. S at 3.) So, even though Khadem had a
colonoscopy scheduled for April 2020, the PHI Report indicated that he would
not undergo the procedure for another two years at the earliest. Khadem was
not given an opportunity to review the PHI Report, which is unsigned, for
accuracy. (Def.'s Statement of Additional Undisputed Material Facts ¶ 6.) As
far as the parties are aware, no other document submitted to American
General during the underwriting process referenced a colonoscopy. (Def.'s

6

Resp. to Pl.'s Statement of Undisputed Material Facts ¶ 30.)

On March 11, 2020, Khadem executed a Policy Acceptance and Amendment of Application (the "Application Amendment"). (Pl.'s Statement of Undisputed Material Facts ¶ 31.) In it, one response from his original Application—to question 5(B)(6)—was changed from "no" to "yes" to reflect Khadem's hemorrhoids diagnosis and treatment. (*Id.* ¶ 31.) The amended entry stated: "treated for hemorrhoids 4/19 & 2/20 with Prednisone, not currently taking-Dr. Joseph Saulsbury, Atlanta, GA." (*Id.*, Ex. R at 2.) Khadem signed the Application Amendment underneath the following certification:

> I represent, on behalf of myself and any person who may have been proposed for insurance, that to the best of my knowledge and belief . . .
> 2. Neither I nor any other proposed insured has, since the date of the application:
>    a. Consulted a licensed healthcare provider or received medical or surgical advice or treatment; or
>    b. Acquired any knowledge or belief that any representation in the application, including information provided or an answer to a question, is now inaccurate, incomplete, or untrue.

(*Id.* ¶ 32.) American General issued the Policy on March 16, 2020. (*Id.* ¶ 33.)

Two days later, Khadem had a colonoscopy with Dr. Hammen, who diagnosed him with Stage 4 rectal cancer on March 26, 2020. (Def.'s Resp. to Pl.'s Statement of Undisputed Material Facts ¶ 34.) He died on September 24, 2020, and the Defendant submitted a claim under the Policy on October 7, 2020. (Pl.'s Statement of Undisputed Material Facts ¶ 35 & Ex. U at 2.) Because Khadem died within two years of the Policy's issuance, American

General initiated a contestable claim review. (*Id.* ¶ 36.) American General follows the AIG RISK Underwriting Manual (the "AIG Manual") in underwriting insurance policies like the one involved in this case. (*Id.* ¶ 37.) According to the declaration of Joan Kline, an American General underwriting specialist, one relevant guideline classifies any medical testing, such as a colonoscopy, that has been advised but not yet completed as an "Auto Decline." (Kline Decl. of May 16, 2022 ¶ 6.) This means that the underwriting process is postponed pending the test results. (*Id.*) Another guideline highlighted by Kline rates Stage 4 colon/colorectal cancer a "D," which also designates an automatic decline. (*Id.* ¶ 7.) Kline asserts that "[h]ad American General known that [Khadem] had a colonoscopy scheduled, it would have suspended the underwriting process and awaited the results." (*Id.* ¶ 8.) Following the cancer diagnosis, Kline continues, "the Policy would not have been issued at all[.]" (*Id.*)

On April 6, 2021, Kline issued an Underwriting Opinion Memo (the "Kline Memo") based on medical records ordered by American General. (Def.'s Statement of Additional Undisputed Material Facts ¶ 8.) The Kline Memo determined that Khadem's cancer diagnosis affected his answers to questions 5(B)(3), 5(C), and 5(G)(2) on the Part B Application. (*Id.* ¶ 9.) On May 19, 2021, American General's counsel sent a letter to the Defendant (the "Counsel Letter") explaining that American General had filed a lawsuit seeking to rescind the Policy in this Court. (*Id.* ¶ 10.) The basis for the lawsuit, according

to the Counsel Letter, was that Khadem had failed to disclose his March 26, 2020 cancer diagnosis before the Policy was issued on April 1, 2020. (*Id.*) Now, American General moves for summary judgment on its sole claim for declaratory judgment. Its litigation position, though, has evolved since the Kline Memo and the Counsel Letter. In the Motion for Summary Judgment, American General treats March 10, 2020, not April 1, 2020, as the Policy's earliest possible delivery date—and thus the last date for Khadem to have amended his Part B answers; American General also argues that Khadem provided incorrect or incomplete responses to questions 2, 5(C), 5(G)(1), and 5(G)(2) on the Part B Application and to statements 2(a) and 2(b) on the Application Amendment. (Pl.'s Br. in Supp. of Pl.'s Mot. for Summ. J., at 17-21; Reply Br. in Supp. of Pl.'s Mot. for Summ. J., at 2.) The matter is fully briefed and ripe for review.

## II.   Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c). The court should view the evidence and draw any inferences in the light most favorable to the nonmovant. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The

burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

### III.   Discussion

American General claims that it is entitled to rescind the Policy under O.C.G.A. § 33-24-7(b). (Pl.'s Br. in Supp. of Pl.'s Mot. for Summ. J., at 16-17.) The statute provides that:

> (b) Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the [insurance] policy or contract unless:
> (1) Fraudulent;
> (2) Material either to the acceptance of the risk or to the hazard assumed by the insurer; or
> (3) The insurer in good faith would either not have issued the policy or contract or would not have issued a policy or contract in as large an amount or at the premium rate as applied for or would not have provided coverage with respect to the hazard resulting in the loss if the true facts had been known to the insurer as required either by the application for the policy or contract or otherwise.

O.C.G.A. § 33-24-7(b). To warrant recission, American General need only establish one of the three factors in § 33-24-7(b), and it relies specifically on subsections (2) and (3). (Pl.'s Br. in Supp. of Pl.'s Mot. for Summ. J., at 17.) The Court will first consider whether Khadem made any misrepresentations or omissions on the Part B Application or the Application Amendment. Then, as necessary, the Court will address whether those misrepresentations or omissions were material to American General's insurance decision.

### A. Misrepresentations or Omissions

Under § 33-24-7(b)(2) and (3), "it is irrelevant whether an applicant acted in good faith or even had knowledge of the falsity when misrepresenting material facts in procuring insurance coverage." *Nappier v. Allstate Ins. Co.*, 961 F.2d 168, 170 (11th Cir. 1992); *see also White v. Am. Family Life Assur. Co.*, 284 Ga. App. 58, 61 (2007) ("Because only subsection (1) refers to fraud, the Supreme Court of Georgia has specifically eschewed any need for the insurer to show that the plaintiff was aware of the falsity of the representation or statement in order to void a policy under subsections (2) or (3)."). What matters is that "the representation was objectively false, regardless of the subjective belief of the insured[.]" *Worley v. State Farm Mut. Auto. Ins. Co.*, 208 Ga. App. 805, 807 (1993).

In response to question 5(G)(1), Khadem checked "no," indicating that he had not consulted a member of the medical profession or had any illness in the past five years. This answer, the Court finds, was false. In fact, between April 10, 2019, and January 23, 2020, Khadem had four doctor appointments, one with Dr. Salsberry and three with Dr. Hammen, to address his ongoing issues with hemorrhoids and rectal pain and bleeding. Had Khadem responded "yes," he would have been required to provide additional details such as "date of diagnosis; name, address, and phone number of doctor; tests performed; test results; medications, hospitalization, ER visit, recommended treatment or any other pertinent details." (Pl.'s Statement of Undisputed Material Facts, Ex. C

11

at 4.) Instead, as completed and signed, the Part B Application did not report Khadem's hemorrhoids diagnosis or treatment, Dr. Hammen's or Dr. Salsberry's identities, or the colonoscopy scheduled for April 2020 to screen for colorectal cancer.

The Defendant counters that the Rx Report, the PHI Report, and the Application Amendment supplied all this information to American General. (Def.'s Br. in Opp'n to Pl.'s Mot. for Summ. J., at 16-17.) Thus, the Defendant argues, there were no misrepresentations or omissions as to question 5(G)(1). (*Id.*) In the Court's view, this argument goes to the issue of materiality, not falsity. While some details of Khadem's medical consultations were scattered across multiple documents, they should have been disclosed under question 5(G)(1). Neither the Part B Application nor the Application Amendment contains an accurate response to that question. If, as the Defendant argues, American General obtained responsive information by other means and still issued the Policy, this may suggest that the omissions were not material, but it does not undo the omissions in the first place. In any event, even the PHI Report contained false statements from Khadem, who claimed that he would not have a colonoscopy for a few years when the reality was a couple months. The Court is not persuaded that Khadem cured his initial omissions with later selective disclosures and outright falsehoods.

Next, Khadem answered "no" to question 5(G)(2), which asked whether he had been advised to have a diagnostic test that was not completed. There is

no dispute that Khadem had been advised to undergo—and had even scheduled—a colonoscopy by the time of his Part B interview. Even so, the Defendant argues that the colonoscopy was not responsive to question 5(G)(2) because it was a routine *screening* for cancer, not a *diagnostic* test. (*Id.* at 17.) According to the Defendant, Khadem's medical records state that the colonoscopy was for screening purposes, and Khadem could only answer the Part B questions based on the information provided by his doctors. (*Id.* at 18.) American General disagrees, citing a string of cases which described colonoscopies as diagnostic tests without actually deciding the interpretive question before the Court. (Pl.'s Br. in Supp. of Pl.'s Mot. for Summ. J., at 18-19 (citing, e.g., *Duff v. Steub*, 378 F. App'x 868, 869 (11th Cir. 2010), and *Pomroy v. Hosp. of Univ. of Pa.*, 105 A.3d 740, 742 n.2 (Pa. 2014)).)

At the outset, the Court is not persuaded that there is any meaningful difference between a diagnostic test and a screening test in the context of question 5(G)(2). During his deposition, the Defendant's expert, Charles Bowden, testified that medical dictionaries are considered an "authoritative source" for construing these terms. (Bowden Dep. at 56:9-13.) One such dictionary, Stedman's Medical Dictionary, defines "screening" in relevant part as: "Examination of a group of usually asymptomatic people to detect those with a high probability of having a given disease, *typically by means of an inexpensive diagnostic test.*" *Screening*, Stedman's Medical Dictionary for the Health Professions and Nursing (7th ed. 2011) (emphasis added). According to

13

this definition, a screening is accomplished through a diagnostic test, not some specialized kind of screening test. So, even if the Defendant is correct that Khadem's colonoscopy was a routine screening, he should have disclosed it under question 5(G)(2).

Assuming diagnostic and screening tests are distinct, the evidence and the case law still support American General's position. Both Bowden and American General's expert, Lynn Patterson, testified that what sets the two tests apart is whether the patient has symptoms of an underlying condition. (Bowden Dep. at 55:9-24, 59:10-18; Patterson Dep. at 49:18-50:11.) That is, screenings are for *asymptomatic* people, whereas diagnostic tests are for *symptomatic* people. Here, as even Bowden admitted, Khadem was exhibiting symptoms of colorectal cancer before his colonoscopy such as persistent rectal pain and bleeding. (Bowden Dep. at 143:16-144:7; *see also* Patterson Dep. at 22:11-23:25; 49:18-50:11.) These symptoms were concerning enough to Dr. Hammen that during the December 12, 2019 appointment, he recommended in his notes "screening for colorectal cancer *with rectal bleeding.*" (Pl.'s Statement of Undisputed Material Facts, Ex. J at 2 (emphasis added).) Faced with this evidence, the Defendant cannot plausibly argue that the colonoscopy was not "a result of any suspicion or diagnosis of cancer."[2] (Def.'s Br. in Opp'n

---

[2] The Defendant offers a declaration from Dr. Hammen in support of her response brief. In it, Dr. Hammen states that he first recommended a colonoscopy to Khadem on April 18, 2019, as a "routine screening for colorectal cancer and not specifically [as] a result of any suspicion or diagnosis of cancer."

to Pl.'s Mot. for Summ. J., at 10.) To the contrary, Dr. Hammen specifically referenced Khadem's rectal bleeding as a reason to check for colorectal cancer.[3] Accordingly, the colonoscopy meets both parties' definition of a diagnostic test.

*American General Life Insurance v. Bolden*, 2011 WL 3278910 (S.D.N.Y. July 27, 2011), is instructive. There, an insurance applicant, who had visible blood in his urine, was directed by his doctor to undergo a cytology test, which is "an element of cancer screening in this context." *Id.* at *1. Although he never completed the cytology test, the applicant marked on his life insurance application that he had not been advised to have any uncompleted diagnostic test. *See id.* On summary judgment, the court held that this answer was false because the applicant "did not complete a cytology test that his doctor had directed him to undergo in connection with his gross hematuria." *Id.* at *3. Like the applicant in *Bolden*, Khadem was experiencing symptoms of colorectal

---

(Hammen Decl. ¶ 4.) By contrast, when describing the December 12, 2019 appointment, Dr. Hammen does not include the same disclaimer—that he did not suspect cancer and considered the colonoscopy to be routine. (*Id.* ¶ 5.) Instead, he merely states that he recommended the colonoscopy "for screening purposes." (*Id.*)

[3] It does not matter whether Khadem knew or believed that the colonoscopy was animated, at least in part, by his colorectal cancer symptoms. (Def.'s Br. in Opp'n to Pl.'s Mot. for Summ. J., at 18 ("[American General] agrees that Khadem can only answer the questions in the Application based on the information that he has been provided by his doctors.").) In Georgia, an insurer need not show that the applicant "was aware of the falsity of the representation or statement in order to void a policy under" O.C.G.A. § 33-24-7(b)(2) and (3). *White*, 284 Ga. App. at 61.

cancer when Dr. Hammen advised him to undergo a colonoscopy, and the colonoscopy was ordered in connection with Khadem's rectal pain and bleeding and hemorrhoids. And like in *Bolden*, a test which is described as a cancer screening also qualifies as a diagnostic test when the patient has symptoms of the cancer being screened for. Thus, the Court concludes that Khadem should have answered "yes" to question 5(G)(2) and reported his uncompleted (but scheduled) colonoscopy to American General.

The Court also finds that Khadem omitted relevant information in response to questions 2 and 5(C). Question 2 asked whether Khadem had a medical appointment scheduled within the next three months and if so, to provide "date, name, address and phone number of physician, and reason for visit." (Pl.'s Statement of Undisputed Material Facts, Ex. C at 2.) Question 5(C) asked whether Khadem had taken any medications or been under medical observation within the past 12 months and if so, to provide details such as "date of diagnosis; name, address, and phone number of doctor; tests performed; test results; medications or recommended treatment." (*Id.* at 4.) Although Khadem checked "yes" to both questions, his written responses were, charitably speaking, incomplete. As to question 2, Khadem listed just one upcoming appointment—a routine physical with Dr. Weddington—but he was scheduled for an appointment with Dr. Hammen the next day (February 13,

2020) and a colonoscopy in April 2020.[4] (*Id.* at 2.) As to question 5(C), Khadem listed two medications for high blood pressure, both prescribed by Dr. Weddington, but not his hemorrhoids diagnosis or the prednisone and Anucort suppositories prescribed by Dr. Hammen and Dr. Salsberry. (*Id.* at 9.) This information was demanded under the plain language of each question.

Finally, on the Application Amendment, Khadem affirmed that his original Part B answers were accurate and complete and that he had not consulted a licensed health care provider or received medical or surgical advice or treatment since February 12, 2020. This too was a misrepresentation. In fact, Khadem had appointments with Dr. Hammen on February 13, 2020, and Dr. Arumugasaamy on March 9, 2020, neither of which were noted in the Application Amendment.[5] During the latter appointment, Dr. Arumugasaamy moved Khadem's colonoscopy from April 2020 to March 18, 2020, but the Application Amendment did not account for this imminent procedure—specifically as to questions 2 and 5(G)(2). In response, the Defendant argues

---

[4] A colonoscopy, according to Bowden, is a "medical appointment." (Bowden Dep. at 89:14-16.)

[5] The Defendant argues that the term "Exceptions," as used in the Application Amendment, is ambiguous. (Def.'s Br. in Opp'n to Pl.'s Mot. for Summ. J., at 20.) But the Defendant's own deposition testimony says otherwise. Indeed, the Defendant stated that she understood "Exceptions" to mean that if there had been some changes since the original Application, then Khadem was required to explain those changes. (Kleshnina Dep. at 97:18-98:3.) She expected that her husband had the same understanding. (*Id.* at 98:4-7.)

that Khadem adequately disclosed his appointments and colonoscopy in the PHI Report. (Def.'s Br. in Opp'n to Pl.'s Mot. for Summ. J., at 19.) Not so. According to the PHI Report, Khadem planned to wait either two years or until age 50 for a colonoscopy since his doctor determined that he did not need one at that time. Obviously, this did not give American General notice that Khadem was preparing to undergo a colonoscopy in mere days. Also, the PHI Report did not mention his recent appointments with Dr. Hammen and Dr. Arumugasaamy—only a prednisone prescription from a nurse practitioner named Barlow in February 2020.

## B. Materiality

Having established the misrepresentation element of its recission claim, American General must next prove that the incorrect statements had a material effect on its decision to issue the Policy. Although the term "material" only appears in § 33-24-7(b)(2), courts incorporate an identical standard into claims brought under subsection (b)(3). *See Nappier*, 961 F.2d at 170 ("The misrepresented facts must be material for § 33-24-7(b)(3) to apply to bar recovery."); *Perkins v. Am. Int'l Specialty Lines Ins. Co.*, 486 B.R. 212, 218 (N.D. Ga. 2012). A misrepresentation or omission is considered material if it "would influence a prudent insurer in determining whether to accept the risk, or in fixing the amount of the premium in the event of such acceptance." *Brown v. JMIC Life Ins. Co.*, 222 Ga. App. 670, 671 (1996). "Ordinarily it is a jury question as to whether a misrepresentation is material, but where the evidence

excludes every reasonable inference except that it was material, it is a question of law for the court." *Miller v. Nationwide Ins. Co.*, 202 Ga. App. 737, 737-38 (1992) (citation omitted).

In rescission cases like this one, it is routine practice for the insurer's underwriter to provide a declaration or affidavit describing the effect of a misstatement on its underwriting process. As the court observed in *Paulk v. Continental General Insurance Co.*, 2005 WL 8154333, at *5 (N.D. Ga. May 31, 2005) (collecting cases):

> Numerous courts have granted summary judgment for the insurer based on the uncontradicted affidavit testimony of the insurer's underwriter concerning materiality, finding that such evidence excludes every reasonable inference except that the misrepresentation or omission was material. . . . Conversely, courts have denied summary judgment for the insurer where the insured submits evidence controverting the affidavit testimony of the insurer's underwriter.

Here, American General relies on Kline's declaration to show that under the AIG Manual, it would have denied coverage to Khadem had his answers been accurate and complete. (Pl.'s Br. in Supp. of Pl.'s Mot. for Summ. J., at 21-23.) According to Kline, two provisions in the AIG Manual are applicable to this case. First, when an applicant has been advised to undergo any uncompleted medical test such as a colonoscopy, the underwriting process is postponed pending the test results, and second, an applicant diagnosed with Stage 4 colon/colorectal cancer is automatically denied coverage.

The Defendant argues—both in the summary judgment briefing and in a separately filed objection—that the Court should disregard these references to the AIG Manual in Kline's declaration. (Def.'s Resp. to Pl.'s Statement of Undisputed Material Facts ¶¶ 38-39; Def.'s Br. in Opp'n to Pl.'s Mot. for Summ. J., at 22; Def.'s Br. in Supp. of Def.'s Objections to Kline Decl. of May 16, 2022, at 5-7.) According to the Defendant, the declaration contains inadmissible hearsay because Kline addresses specific provisions in the AIG Manual without attaching the actual document or producing it elsewhere in the record. (Def.'s Br. in Supp. of Def.'s Objections to Kline Decl. of May 16, 2022, at 6; Reply Br. in Supp. of Def.'s Objection to Kline Decl. of May 16, 2022, at 3.) The Defendant insists that "[i]f written documents are relied upon they actually must be exhibited; affidavits that purport to describe a document's substance or an interpretation of its contents are insufficient." (Def.'s Br. in Supp. of Def.'s Objections to Kline Decl. of May 16, 2022, at 6-7 (quoting *Genesis Grp., Inc. v. Transp. Mgmt. & Logistics Consultants, Inc.*, 2009 WL 10698761, at *7 (N.D. Ga. Apr. 27, 2009)).) Indeed, the advisory committee's notes to Rule 56 bear out this point: "Materials that are not yet in the record—*including materials referred to in an affidavit or declaration*—must be placed in the record." Rule 56(c)(1)(A) advisory committee's note to 2010 amendment (emphasis added); *see also Loadman Grp., LLC v. Banco Popular N. Am.*, 2013 WL 1154528, at *8-9 (N.D. Ohio Mar. 19, 2013) (explaining that since its amendment in 2010, Rule 56 requires that a document referenced in an affidavit appear somewhere

in the record if it is not attached to the affidavit itself).

To cure the evidentiary shortcomings in Kline's original declaration, American General files a second declaration from Kline which contains the previously cited excerpts from the AIG Manual. (Kline Decl. of June 16, 2022 ¶¶ 3-4 & Exs. 1-2.) Again, the Defendant objects—this time on the grounds that Rule 6(c)(2) requires supporting declarations to be filed solely with the opening motion. (Def.'s Br. in Supp. of Def.'s Objections to Kline Decl. of June 16, 2022, at 6-10.) But courts routinely consider a movant's supplemental affidavit or declaration when it is offered to correct technical deficiencies in evidence that were identified in the opposing party's response brief. *See, e.g.*, *Lightsey v. Potter*, 268 F. App'x 849, 852 (11th Cir. 2008) ("The district court did not err in considering the declaration attached to the USPS's reply brief," which was submitted "in response to Lightsey's challenge to the authenticity of certain evidence attached to the USPS's motion for summary judgment."); *Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, 2015 WL 11604481, at *1 (M.D. Penn. Mar. 9, 2015) (noting that Rule 6(c)(2) "plac[es] no restrictions on documentation accompanying a reply brief" and that "a movant may cure technical defects in documentary evidence by filing corrective affidavits with its reply brief"); *First Citizens Bank & Tr. Co., Inc. v. Hwy 81 Venture, LLC*, 2012 WL 779894, at *5 (N.D. Ga. Mar. 6, 2012) ("Updegraff's supplemental affidavit in plaintiff's reply . . . cures the defect in the foundational aspect of his original testimony[.]"). American General filed the second Kline declaration

21

on the same date as its reply brief in support of summary judgment,[6] and the Defendant has had ample opportunity to respond to both the substance and the admissibility of the AIG Manual in her many motions to exclude evidence. Thus, the Court determines that it can consider Kline's original declaration and her references to the AIG Manual and denies the Defendant's Objections to the Declaration of Joan Kline Filed June 16, 2022 and the Defendant's Objections to Portions of the Declaration of Joan Kline.

Even if the Kline declaration lacked the proper evidentiary foundation, other uncontroverted evidence in the record demonstrates the materiality of Khadem's misrepresentations. During her deposition, Kline testified that the AIG Manual provides "essential information for determining what is and what is not a proper risk for American General." (Kline Dep. at 11:6-21.) When asked whether she used the AIG Manual as to the Defendant's death claim, she responded: "One [guideline] pops out. That we did not issue a policy for any medical testing that was advised but not yet completed." (*Id.* at 12:16-23.) That guideline, she believed, appears in "two spots within [the AIG M]anual," including "a portion where it says when to request an [attending physician statement] or reasons to decline." (*Id.* at 12:24-13:6.) As opposed to Kline's

---

[6] American General did not attach Kline's supplemental declaration to its reply brief, but to its response brief in opposition to one of the Defendant's evidentiary objections. This was appropriate practice since the Defendant raised her specific arguments against Kline's original declaration in the separate objection.

declaration, the Defendant has not objected to the admissibility of her deposition testimony on hearsay or any other grounds, so the Court will consider it. Further, Bowden testified that if a life insurance applicant presented with hemorrhoids, rectal bleeding and pain, and a scheduled colonoscopy, then "any test would preclude issuance of a policy"; that is, "if the insurance company knew, and it wasn't disclosed that a screening test was— that a diagnostic test was scheduled, they would postpone." (Bowden Dep. at 81:20-84:17.) He also agreed with American General's counsel that colorectal cancer "is a condition that an insurance company would not insure." (*Id.* at 81:7-17.) Patterson echoed these conclusions in his expert report, stating that "no prudent underwriter would have allowed this policy to go in force without first obtaining the medical records of the March 9, 2020, consultation and the results of the March 18, 2020, colonoscopy." (Pl.'s Statement of Undisputed Material Facts, Ex. X at 7.) He also opined that "[n]o prudent underwriter [would have] placed this Policy in force for Mr. Khadem upon a determination of cancer." (*Id.* at 8.)

Considering Kline's and the experts' deposition testimonies, the nature of Khadem's misrepresentations, and the details of the underwriting process, the Court concludes that at least some of Khadem's misrepresentations were material. Specifically, Khadem had a colonoscopy scheduled for April 2020 at the time of his Part B interview but did not disclose it under questions 2 or 5(G)(2). Nor did he correct his responses to those questions when completing

the Application Amendment, by which time his colonoscopy had been moved up to March 18, 2020. Had American General known about Khadem's pending colonoscopy, the evidence shows that American General would have awaited the results and then not issued the Policy following his cancer diagnosis. The same goes for Khadem's failure to update questions 5(C) and 5(G)(1) on the Application Amendment and his certification under statement 2(a) that he had not consulted a doctor or received medical advice since completing his Application. In fact, he saw two doctors at Wellstar Colon and Rectal Surgery in February and March 2020 about his hemorrhoids and rectal pain and bleeding. Again, had Khadem disclosed these appointments—and in particular the planned coloscopy—the evidence shows that American General would have sought more details about Khadem's medical condition and care, as it did when the Rx Report first revealed Khadem's prescriptions from Dr. Hammen.[7]

---

[7] The Defendant argues that the PHI Report contained all the details requested by question 5(G)(1), including his hemorrhoids diagnosis and treatment and his consultations with Dr. Hammen. (Def.'s Br. in Opp'n to Pl.'s Mot. for Summ. J., at 16-17.) But the PHI Report did not report that Khadem had seen Dr. Arumugasaamy in addition to Dr. Hammen, nor did it reveal that a colonoscopy was scheduled in part to assess treatment options for his hemorrhoids. This information was expressly required under question 5(G)(1). (Pl.'s Statement of Undisputed Material Facts, Ex. C at 4 (asking the applicant, if answering "yes," to provide details such as "name, address, and phone number of doctor" and "recommended treatment"—in addition to "any other pertinent details").) Instead, the PHI Report misled American General into believing that Khadem did not need a colonoscopy and would not undergo the procedure for many years.

24

In an attempt to rebut American General's evidence, the Defendant claims that Khadem informed St. Martin, the paramedical examiner who conducted his Part B interview, about his hemorrhoids, rectal bleeding, and scheduled colonoscopy. (Def.'s Br. in Opp'n to Pl.'s Mot. for Summ J., at 22-23; Kleshnina Dep. at .) But St. Martin, according to the Defendant, told Khadem that the information was not relevant and declined to record it on the Application. (*Id.* at 23.) So, the argument goes, American General had notice of the information that it now claims was material to Khadem's insurance risk but chose to issue the Policy anyway. (*Id.*)

As an initial matter, St. Martin unequivocally denied the Defendant's recollection of events during her deposition. She testified: "Like I said, if it was said, it was written down. If it wasn't said, it was not written down. It's just as simple as that. That's how we were trained to do it, and, you know, I have no reason to not, you know, answer correctly." (St. Martin Dep. at 31:13-20; *see also id.* at 42:10-43:22.) Further, under Georgia law, "[t]he applicant is bound by the answers recorded on the application, whether written by him or by the agent, absent any fraud on the part of the agent in deceiving him as to what was in fact written down as answers, or in preventing him from reading and ascertaining what was written down." *Jennings v. Life Ins. Co. of Ga.*, 212 Ga. App. 140, 141 (1994) (citation omitted). Here, the Defendant agrees that there was no fraud or deception in St. Martin's conduct during the interview and that Khadem was under no disability or other condition that inhibited him from

25

answering the questions truthfully. In signing the Application, Khadem declared that his answers to the Part B questions were true and complete to the best of his knowledge and belief. And he acknowledged that no information about him would be considered to have been given to American General by him unless it was stated in the application. These declarations are "formulated to prevent an applicant from asserting that he relied upon someone else, and to ensure that the declaration of truth is not the act of one whose insertion of material misrepresentations would be binding upon the company." *Id.* (citation omitted). Thus, even assuming that St. Martin advised Khadem not to include responsive information on his Application, American General is not estopped from denying coverage based on his material misstatements.[8] *See id.*

Next, the Defendant argues that American General has conceded that there were no material misrepresentations as to questions 2 and 5(C). (Def.'s Br. in Opp'n to Pl.'s Mot. for Summ. J., at 20-22.) Accepted as true, this argument would not affect the outcome on summary judgment because the Court has found material misrepresentations as to questions 5(G)(1) and 5(G)(2) as well as statements 2(a) and 2(b). Even so, the Defendant is mistaken.

---

[8] In any event, there is no evidence that St. Martin acted as American General's agent such that she could bind the company. Even the Defendant agrees that St. Martin worked as an independent contractor for APPS, not American General. (St. Martin Dep. at 9:7-17, 22:7-24:4.) And the Defendant's reliance on century-old case law is misplaced since those cases conflict with the more recent guidance in *Jennings.* (Def.'s Br. in Opp'n to Pl.'s Mot. for Summ. J., at 23.)

In an earlier interrogatory, the Defendant asked American General to state each ground on which it contended the death claim was not payable, including specific provisions of the Application or the Policy; American General cited questions 5(B)(2), 5(G)(1), and 5(G)(2) as well as false certifications made by Khadem on the Application Amendment. (Pl.'s Resps. to Def.'s First Interrogs. ¶¶ 2, 13.) The Defendant argues that Kline and Patterson later confirmed this response during their depositions, failing to identify any problems with Khadem's answers to questions 2 and 5(C). (Def.'s Br. in Opp'n to Pl.'s Mot. for Summ. J., at 20-21.) But Kline plainly testified that Khadem omitted relevant information in response to question 5(C), such as his rectal pain and bleeding and the multiple colonoscopies that he had postponed or rescheduled. (Kline Dep. at 37:4-38:20.) She also testified that Khadem failed to disclose his scheduled colonoscopy in response to question 2 either on the Part B Application or the Application Amendment. (*Id.* at 77:7-18, 82:20-83:6.) So, the Court finds, American General gave ample notice to the Defendant that it believed Khadem's answers to questions 2 and 5(C) were false and justified recission.[9] The Defendant, for her part, cites no case law to support that American General is now estopped from maintaining this position. (Def.'s Br.

---

[9] For this reason, the Court need not consider the errata sheet to Kline's deposition, which sought to clarify American General's position that question 2 had been answered incorrectly. Accordingly, the Defendant's Objections to the Errata Sheet to Plaintiff's Rule 30(B)(6) Deposition is denied as moot.

in Opp'n to Def.'s Mot. for Summ. J., at 21-22.)

Finally, the Defendant argues that American General waived the right to rescind the Policy because it retained Khadem's insurance premiums with knowledge of the misrepresented facts. (Def.'s Br. in Opp'n to Pl.'s Mot. for Summ. J., at 24-25.) Addressing an identical argument, the Georgia Court of Appeals held that an insurer is not required to rescind a policy and return the premiums when seeking declaratory relief. *See Ga. Cas. & Surety Co. v. Valley Wood, Inc.*, 336 Ga. App. 795, 797-98 (2016).

> An insurer may file a declaratory action in order to determine whether an insurance policy is voidable. Although a prerequisite to rescission is placing the other party in the status quo ante, it does not follow that the insurer must allege a return of premiums when seeking a declaratory judgment that it is entitled to void the policy. An insurer may want to know whether a policy is, in fact, voidable before seeking to rescind the policy, and a declaratory judgment is an appropriate means to that end.

*Id.* at 798 (citation omitted). The same reasoning applies to American General's claim for declaratory judgment. Also, unlike in the Defendant's preferred cases, American General did not delay in challenging the Policy once it learned of Khadem's material misrepresentations. *See, e.g.*, *Lively v. S. Heritage Ins. Co.*, 256 Ga. App. 195, 198 (2002) (insurance company knew of misrepresentations in the application in October 1997 but did not seek to void the policy until after the insured filed suit over an unpaid claim in October 1998); *Thompson v. Permanent General Assur. Corp.*, 238 Ga. App. 450, 451 (1999) (when the insured informed his insurance agent of the alleged

misrepresentation, the agent did not rescind the policy but renewed it with an amendment and a higher premium). Rather, American General immediately initiated a contestable claim review in response to the Defendant's death claim, issued the Kline Memo on April 6, 2021, finding material misrepresentations on Khadem's Application, and filed this rescission action on May 19, 2021.

## IV.   Conclusion

For the foregoing reasons, the Plaintiff's Motion for Summary Judgment [Doc. 28] is GRANTED, the Defendant's Objections to the Declaration of Joan Kline Filed June 16, 2022 [Doc. 50] is DENIED, the Defendant's Objections to Portions of the Errata Sheet to Plaintiff's Rule 30(b)(6) Deposition [Doc. 58] is DENIED as moot, and the Defendant's Objections to Portions of the Declaration of Joan Kline [Doc. 59] is DENIED.

SO ORDERED, this ____9th____ day of November, 2022.


THOMAS W. THRASH, JR.
United States District Judge